UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DECKERS OUTDOOR CORP.,

     Plaintiff,

     v.

AUSTRALIAN LEATHER PTY. LTD. and
ADNAN OYGUR a/k/a EDDIE OYGUR,

     Defendants.

No. 16 CV 3676

Judge Manish S. Shah

**JURY INSTRUCTIONS**

Members of the jury, you have seen and heard all the evidence and arguments of the attorneys. Now I will instruct you on the law.

You have two duties as a jury. Your first duty is to decide the facts from the evidence in the case. This is your job, and yours alone.

Your second duty is to apply the law that I give you to the facts. You must follow these instructions, even if you disagree with them. Each of the instructions is important, and you must follow all of them.

Perform these duties fairly and impartially. Do not allow sympathy, prejudice, fear, or public opinion to influence you. You should not be influenced by any person's race, color, religion, national ancestry, or sex.

Nothing I say now, and nothing I said or did during the trial, is meant to indicate any opinion on my part about what the facts are or about what your verdict should be.

In this case some of the parties are corporations. All parties are equal before the law. A corporation is entitled to the same fair consideration that you would give any individual person.

The evidence consists of the testimony of the witnesses, the exhibits admitted in evidence, and stipulations.

A stipulation is an agreement between both sides that certain facts are true.

During the trial, certain testimony was presented to you by the reading of depositions and video. You should give this testimony the same consideration you would give it had the witnesses appeared and testified here in court.

Certain things are not to be considered as evidence. I will list them for you:

First, if I told you to disregard any testimony or exhibits or struck any testimony or exhibits from the record, such testimony or exhibits are not evidence and must not be considered.

Second, anything that you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded. This includes any press, radio, Internet or television reports you may have seen or heard. Such reports are not evidence and your verdict must not be influenced in any way by such publicity.

Third, questions and objections or comments by the lawyers are not evidence. Lawyers have a duty to object when they believe a question is improper. You should not be influenced by any objection, and you should not infer from my rulings that I have any view as to how you should decide the case.

Fourth, the lawyers' opening statements and closing arguments to you are not evidence. Their purpose is to discuss the issues and the evidence. If the evidence as you remember it differs from what the lawyers said, your memory is what counts.

Any notes you have taken during this trial are only aids to your memory. The notes are not evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollections or impressions of each juror about the testimony.

In determining whether any fact has been proved, you should consider all of the evidence bearing on the question regardless of who introduced it.

You will recall that during the course of this trial I instructed you that I admitted certain evidence for a limited purpose. You must consider this evidence only for the limited purpose for which it was admitted.

You should use common sense in weighing the evidence and consider the evidence in light of your own observations in life.

In our lives, we often look at one fact and conclude from it that another fact exists. In law we call this "inference." A jury is allowed to make reasonable inferences. Any inference you make must be reasonable and must be based on the evidence in the case.

You may have heard the phrases "direct evidence" and "circumstantial evidence." Direct evidence is proof that does not require an inference, such as the testimony of someone who claims to have personal knowledge of a fact. Circumstantial evidence is proof of a fact, or a series of facts, that tends to show that some other fact is true.

As an example, direct evidence that it is raining is testimony from a witness who says, "I was outside a minute ago and I saw it raining." Circumstantial evidence that it is raining is the observation of someone entering a room carrying a wet umbrella.

The law makes no distinction between the weight to be given to either direct or circumstantial evidence. You should decide how much weight to give to any evidence. In reaching your verdict, you should consider all the evidence in the case, including the circumstantial evidence.

You must decide whether the testimony of each of the witnesses is truthful and accurate, in part, in whole, or not at all. You also must decide what weight, if any, you give to the testimony of each witness.

In evaluating the testimony of any witness, including any party to the case, you may consider, among other things:

- the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;

- the witness's memory;

- any interest, bias, or prejudice the witness may have;

- the witness's intelligence;

- the manner of the witness while testifying;

- and the reasonableness of the witness's testimony in light of all the evidence in the case.

You may consider statements given by Mr. Oygur before trial as evidence of the truth of what he said in the earlier statements, as well as in deciding what weight to give his testimony.

With respect to other witnesses, the law is different. If you decide that, before the trial, one of these witnesses made a statement or acted in a manner that is inconsistent with his testimony here in court, you may consider the earlier statement or conduct only in deciding whether his testimony here in court was true and what weight to give to his testimony here in court.

In considering a prior inconsistent statement or conduct, you should consider whether it was simply an innocent error or an intentional falsehood and whether it concerns an important fact or an unimportant detail.

You may find the testimony of one witness or a few witnesses more persuasive than the testimony of a larger number. You need not accept the testimony of the larger number of witnesses.

The law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial. Similarly, the law does not require any party to present as exhibits all papers and things mentioned during this trial.

You have heard witnesses give opinions about matters requiring special knowledge or skill. You should judge this testimony in the same way that you judge the testimony of any other witness. The fact that such person has given an opinion does not mean that you are required to accept it. Give the testimony whatever weight you think it deserves, considering the reasons given for the opinion, the witness's qualifications, and all of the other evidence in the case.

When I say a particular party must prove something by "a preponderance of the evidence," or when I use the expression "if you find," or "if you decide," this is what I mean: When you have considered all the evidence in the case, you must be persuaded that it is more probably true than not true.

A trademark is a word, symbol, or combination of words or symbols used by a person to identify a product, to distinguish that product from those manufactured or sold by others, and to indicate the source of the product, even if that source is generally unknown.

The purpose of trademark law is to prevent confusion among consumers about the source of products and to permit trademark owners to show ownership of their products and control their product's reputation.

Plaintiff claims that Defendants infringed Plaintiff's UGG trademark for footwear by Defendants' unauthorized use of "UGG" on Defendants' footwear and in connection with Defendants' online sales of its footwear to customers in the United States in a manner that was likely to cause confusion, cause mistake, or deceive consumers. Defendants deny that their actions caused a likelihood of confusion. Defendants also say that their use of the word "UGG" was a non-source-identifying use.

Plaintiff claims that Defendants infringed Plaintiff's Cardy trademark for footwear by Defendants' use of "Cardy" on their website in connection with their sale of footwear to customers in the United States. The parties have agreed that Defendants' actions constitute trademark infringement of Plaintiff's Cardy trademark. The parties dispute, however, whether that trademark infringement was willful. In a separate instruction I will give you a definition of willful infringement.

To prove its claim for trademark infringement, Plaintiff must prove by a preponderance of the evidence as to a Defendant, that the Defendant used "UGG" in the United States in connection with the sale, offering for sale, distribution, or advertisement of goods in a manner that is likely to cause confusion, cause mistake, or deceive consumers as to the source, origin, sponsorship, or approval of Defendant's products.

If you find that Plaintiff has proved that by a preponderance of the evidence, then you must find for Plaintiff as to that Defendant. If, however, Plaintiff did not prove this by a preponderance of the evidence, then you must find for that Defendant.

As I have told you, one of the things that Plaintiff must prove is that Defendants used "UGG" in the United States in a manner that is likely to cause confusion as to the source, origin, sponsorship, or approval of Defendants' products.

Plaintiff must prove a likelihood of confusion among a significant number of people who buy or use, or consider buying or using, the products or similar products.

In deciding this, you should consider the following:

- Whether the overall impression created by Defendants' use of "UGG" is similar to that created by Plaintiff's UGG trademark in appearance, sound, or meaning;

- Whether Defendants and Plaintiff use the mark or designation UGG on the same or related products;

- Whether Plaintiff's and Defendants' products are likely to be sold in the same or similar stores or outlets or channels of trade, or advertised in similar media;

- The degree of care that purchasers or potential purchasers are likely to exercise in buying or considering whether to buy the products. This may depend on the level of sophistication of potential buyers of the products and the cost of the products;

- The degree to which purchasers or potential purchasers recognize Plaintiff's UGG trademark as an indication of the origin of Plaintiff's products. This is sometimes referred to as the strength or distinctiveness of the trademark;

- Whether Defendants' use of "UGG" has led to instances of actual confusion among purchasers or potential purchasers about the source, origin, sponsorship, or approval of Defendants' products. Actual confusion, however, is not required for finding a likelihood of confusion;

- Whether Defendants intended to pass off their products as that of Plaintiffs, or intended to confuse consumers.

The weight to be given to each of these factors is up to you to determine. No particular factor or number of factors is required to prove likelihood of confusion.

Confusion, mistake, or deception as to the source, association, affiliation, or connection of a product can occur at three distinct times: (a) before the purchase (called "initial interest" confusion); (b) at the moment of purchase (called "point-of-sale" confusion); and (c) after the purchase (called "post-sale" confusion). Each of these types of confusion, mistake, or deception qualifies as confusion under the claims at issue in this case.

Initial interest confusion occurs when someone uses a mark or term similar to someone else's trademark in a manner to capture initial consumer attention to the product at issue. Even though no actual sale is finally completed as a result of the confusion, there still may be infringement. Initial interest confusion gives a newcomer to the market credibility during the early stages of a potential purchase, such as when the consumer first sees the mark or term, and can unfairly prevent the trademark owner from being considered by the consumer even after the confusion has been removed.

Point-of-sale confusion occurs when confusion, mistake, or deception exists at the time of the sale of a product.

Post-sale confusion can occur when someone other than the purchaser sees the item after it has been purchased and that confusion then influences a later purchasing decision by the person who saw that item post-sale.

How strongly Plaintiff's UGG trademark indicates that the goods come from a particular source is one factor to consider in determining whether "UGG" as used by Defendants is likely to create confusion, mistake, or deception with Plaintiff's UGG trademark. The date that the alleged infringement began is the relevant time for evaluating the strength of Deckers' UGG trademark, but you may consider all of the evidence in the case when making your decision.

The more distinctive and strong a trademark is, the greater the scope of protection the law provides. The law measures trademark strength by considering two things:

1. Commercial Strength: This is the amount of marketplace recognition of the mark; and

2. Conceptual Strength: This is the placement of the mark on the spectrum of strength of marks.

**Commercial Strength**: Not all marks are equally well known. Some trademarks are relatively "strong," in the sense they are widely known and recognized. A few trademarks are in the clearly "famous" category. These "famous" marks are those like "Apple" for computers and mobile phones, "Google" for a search engine, "Coca-Cola" for beverages, and "Toyota" for vehicles.

**Conceptual Strength:** All trademarks are grouped into two categories: either inherently distinctive or not inherently distinctive. If a mark is inherently distinctive it is immediately protected when first used. If it is not inherently distinctive, to become a legally protected mark, a designation must acquire distinctiveness in people's minds by becoming known as an indication of source of the goods.

For determining the conceptual strength of a mark, trademarks are grouped on a spectrum according to the nature of the mark. In that spectrum, there are three categories of word marks that the law regards as being inherently distinctive: fanciful; arbitrary; and suggestive. Descriptive word marks are regarded as not being inherently distinctive and require a secondary meaning in order to become a valid trademark. These terms are further defined below.

A "fanciful" term is a newly created word or parts of common words that are used in a fictitious, unfamiliar, or fanciful way. For example, "Exxon" for gasoline is a fanciful mark.

An "arbitrary" term is a common term used in an unfamiliar way. For example, "Apple" for computers is an arbitrary mark.

A "suggestive" term implies some characteristic or quality of the product. If the consumer must use imagination, reflection, or additional reasoning to understand the meaning of the mark as used with the product, then the mark is

suggestive. For example, when "apple" is used in the mark "Apple-A-Day" for vitamins, it is being used as a suggestive trademark. "Apple" does not describe what the vitamins are. It does, however, suggest the healthfulness of "an apple a day keeping the doctor away" with the supposed benefits of taking "Apple-A-Day" vitamins.

A "descriptive" term is not inherently distinctive. It directly describes some characteristic or quality of the goods or services with which it is used in a straightforward way that requires no exercise of imagination. For example, the word "apple" is descriptive when used in the trademark "CranApple" to designate a cranberry-apple juice. It directly describes one of the ingredients of the juice. Descriptive marks, while not inherently distinctive, can become distinctive if they acquire distinctiveness through use of the mark in the marketplace.

Trademark rights exist in each country solely according to that country's laws. Accordingly, use and registration of a trademark in a foreign country does not affect U.S. trademark rights.

If you find a Defendant infringed Plaintiff's UGG trademark, you must also determine whether Plaintiff has proven by a preponderance of the evidence that, at the time that Defendant did so, Defendant acted willfully. A Defendant acted willfully if the Defendant knew that they were infringing Plaintiff's trademark or if they acted with indifference to Plaintiff's trademark rights.

The parties have stipulated that Defendants infringed Plaintiff's Cardy trademark. Plaintiff claims that Defendants infringed Plaintiff's Cardy trademark willfully. Defendants deny that such infringement was willful. You therefore must determine whether Plaintiff has proven by a preponderance of the evidence as to a Defendant that, at the time the Defendant infringed the Cardy trademark, that Defendant acted willfully. Defendant acted willfully if the Defendant knew that they were infringing Plaintiff's trademark or if they acted with indifference to Plaintiff's trademark rights.

Plaintiff claims that Defendants have committed counterfeiting by unlawfully using "UGG" in the sale, offer to sell, distribution, or advertising of goods without Plaintiff's authorization. To prove a claim for counterfeiting, Plaintiff must prove by a preponderance of the evidence as to a Defendant, that the Defendant's use of "UGG" is a copy that is identical or substantially indistinguishable from Plaintiff's registered UGG trademark. You may consider how the Defendant used "UGG" in the marketplace.

If you find that Plaintiff proved that Defendants engaged in counterfeiting, you must consider whether and to what extent money damages should be awarded.

To recover damages, Plaintiff must prove by a preponderance of the evidence that Plaintiff displayed its trademark with the letter R enclosed in a circle, that is, ®, or that Defendant knew that Plaintiff's mark was registered.

Plaintiff seeks what is known as an award of "statutory damages." Statutory damages are damages established by the United States Congress in the Lanham Act. The purpose of statutory damages is to: compensate the trademark owner, penalize the counterfeiter, and deter future trademark counterfeiting. You may award statutory damages in an amount between $1,000 and $200,000.

If you find that Plaintiff proved that a Defendant's use of the counterfeit trademark was willful, then you may, but are not required to, increase the statutory damage award up to a maximum of $2,000,000. To establish willfulness, it is not necessary that a Defendant knew that the trademark was registered by Plaintiff, only that the Defendant knew that their use of "UGG" was a counterfeit of the UGG trademark or acted with indifference to Plaintiff's trademark rights.

This case also involves four United States design patents.

Patents are granted by the United States Patent and Trademark Office (sometimes called the "Patent Office" or "PTO").

A "design patent" protects the way an article looks. A design patent is directed to the ornamental design for an article of manufacture. "Ornamental design" means the shape of the design. A valid United States design patent gives the patent owner the right for 14 years from the date the patent is granted to prevent others from making, using, offering to sell, or selling articles embodying the patented design within the United States or from importing it into the United States without the patent holder's permission. A violation of the patent owner's rights is called patent infringement.

There are four design patents asserted in this case, each of which claims an ornamental design for footwear upper (the part of an article of footwear, in this case a boot, that is above the sole).

The parties have agreed that the Plaintiff's four design patents-in-suit are valid, enforceable and infringed by Defendants Australian Leather's and Eddie Oygur's sales to buyers in the United States of the Australian Leather knit boot (Exhibit 68A), one-button boot (Exhibit 64A), three-button boot (Exhibit 66A), and side bow boot (Exhibit 67A), respectively. Plaintiff has waived its claim for actual damages and profits for infringement. Although the design patent claims have been resolved by the parties' agreement, you may consider the evidence regarding the design patents in determining whether Defendants' conduct was willful, giving it whatever weight you think it deserves.

You must give separate consideration to each claim and each party in this case. Although there are two defendants, it does not follow that if one is liable, the other is also liable.

In general, without a special showing, the managing officers of a corporation are not liable for infringements by the corporation. Such a special showing that would make managing officers of the corporation personally liable for infringement is made where the managing officer personally participates in the sale of the infringing article.

Once you are all in the jury room, the first thing you should do is choose a presiding juror. The presiding juror will preside over your deliberations and will be your representative here in court. You may discuss the case only when all jurors are present.

A verdict form has been prepared for you.

[Verdict form read.]

Take this form to the jury room, and when you have reached unanimous agreement on the verdict, your presiding juror will fill in and date the form, and all of you will sign it.

Once you start deliberating, do not communicate about the case or your deliberations with anyone except other members of your jury. You may not communicate with others about the case or your deliberations by any means. This includes oral or written communication, as well as any electronic method of communication, such as cell phone, text messaging, instant messaging, Facebook, Twitter, or any other method of communication.

I do not anticipate that you will need to communicate with me. If you do need to communicate with me, the only proper way is in writing. The writing must be signed by the presiding juror, or, if he or she is unwilling to do so, by some other juror. The writing should be given to the court security officer, who will give it to me. To have a complete record of this trial, it is important that you do not communicate with me except by a written note. I may have to talk to the lawyers about your message, so it may take me some time to get back to you. You may continue your deliberations while you wait for my answer. Please be advised that transcripts of trial testimony are not available to you. You must rely on your collective memory of the testimony.

If you do communicate with me, you should not indicate in your note what your numerical division is, if any.

The verdicts must represent the considered judgment of each juror. Your verdicts, whether for or against the parties, must be unanimous.

You should make every reasonable effort to reach a verdict. In doing so, you should consult with one another, express your own views, and listen to the opinions of your fellow jurors. Discuss your differences with an open mind. Do not hesitate to reexamine your own views and change your opinion if you come to believe it is wrong. But you should not surrender your honest beliefs about the weight or effect of evidence solely because of the opinions of other jurors or for the purpose of returning a unanimous verdict.

All of you should give fair and equal consideration to all the evidence and deliberate with the goal of reaching an agreement that is consistent with the individual judgment of each juror. You are impartial judges of the facts.