# EXHIBIT 2

# INTABulletin

The Voice of the International Trademark Association

November 15, 2011     Vol. 66  No. 20            **Back to Bulletin Main Page**

## Practical Tips on Avoiding Genericide

**Gary H. Fechter**, McCarter & English LLP, New York, New York, USA
**Elina Slavin**, McCarter & English LLP, Newark, New Jersey, USA

### What is Genericide?
Genericide, when a protectible trademark becomes generic, is a serious but avoidable consequence. CELLOPHANE, LANOLIN and ESCALATOR were trademarks that met this fate. Because genericide can be devastating to a company's intellectual property portfolio, precautions should be taken to ensure that the trademark is used correctly from the time of its adoption.

Under U.S. law, genericide is a form of abandonment. A mark will be deemed to be "abandoned" if: (1) its use has been discontinued for three years with intent not to resume such use; or (2) when the mark becomes the generic name for the goods or services on or in connection with which it is used. Courts have defined "generic" as "the genus of which the particular product or service is a species." *Surgicenters of America, Inc. v. Medical Dental Surgeries, Co.*, 601 F.2d 1011, 1014 (9th Cir. 1979). In other words, a generic term is "the name of the product or service itself - what [the product] is, and as such . . . the very antithesis of a mark." 2 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 12:1[1] (4th ed. 1997). A trademark can become the generic name for the goods or services on or in connection with which it is used if the trademark owner fails to use the mark correctly on its goods or services and in advertising, fails to prevent infringements and generic uses, or fails to educate the public as to the proper generic name for the goods or services. 1-2 *Gilson on Trademarks* § 2.02 (2011). Once a mark is generic, it is in the public domain for use by all, including competitors.

### Legal Standard for Genericness
In the case deeming ASPIRIN generic in the United States, the late Judge Learned Hand set forth a standard for determining whether a mark has become generic:

*The single question, as I view it, in all these cases, is merely one of fact: What do the buyers understand by the word for whose use the parties are contending? If they understand by it only the kind of goods sold, them [sic], I take it, it makes no difference whatever what efforts the plaintiff has made to get them to understand more. He has failed, and he cannot say that, when the defendant uses the word, he is taking away customers who wanted to deal with him, however closely disguised he may be allowed to keep his identity.*

*Bayer Co. v. United Drug Co.*, 272 F. 505, 509 (S.D.N.Y. 1921).

The federal courts today apply more specific standards for determining genericness. *Gilson on Trademarks* § 2.02. For example, the Federal Circuit and the Trademark Trial and Appeal Board conduct a two-part inquiry: "First, what is the genus of the goods or services at issue? Second, is the term sought to be registered . . . understood by the relevant public primarily to refer to that genus of goods or services?" *E.g., In re Dial-A-Mattress Operating Corp.*, 240 F.3d 1341, 1344 (Fed. Cir. 2001), quoting *H. Marvin Ginn Corp. v. International Ass'n of Fire Chiefs, Inc.*, 782 F.2d 987, 990 (Fed. Cir. 1986); *In re American Academy of Facial Plastic and Reconstructive Surgery*, 2002 T.T.A.B. LEXIS 312 (T.T.A.B. 2002).

### Are These Marks Still Protectable?
Perhaps one of the earliest marks to become generic was LINOLEUM (1878); one of the more recent marks that was on the verge of becoming generic was FORMICA (1978). The Formica case marked a turning point in genericness litigation because for the first time the Federal Trade Commission (FTC) invoked its authority under Section 14 of the Lanham act by instituting a cancellation action based solely on the fact that it believed that the mark (FORMICA) had become generic. Melton, Carol A., "Generic Term or Trademark?: Confusing Legal Standards and Inadequate Protection," American University Law Review, 29

FTC alleged that the term FORMICA had become "the common descriptive name for decorative plastic laminates used on counter tops, table tops and the like." *FTC v. Formica Corp.*, Cancellation No. 11955 (T.T.A.B., filed May 31, 1978). The implication of the FTC's allegation was that no material differences in quality existed between the plastic laminates produced by the Formica Corporation and those offered for sale by its competitors and therefore, all manufacturers of such products should be able to describe their wares as FORMICA. The FTC's attempt to cancel the mark FORMICA ultimately proved fruitless and the mark was spared from becoming generic.

Other marks that were once on their way to becoming generic include XEROX, JEEP, BAND-AID, and KLEENEX. To prevent these trademarks from becoming generic, each trademark owner ran an aggressive ad campaign to educate consumers to view its trademark as a source identifier as opposed to a common name for its goods and/or services. Examples of these ad campaigns are:

- Xerox Corp.'s "You can't Xerox a Xerox on a Xerox. But we don't mind at all if you copy a copy on a Xerox® copier."
- Chrysler LLC's "They invented "SUV" because they can't call them Jeep®."
- Johnson & Johnson Corp.'s "I am stuck on Band-Aids brand cause Band-Aid's stuck on me."
- Kimberly-Clark Corp.'s " 'Kleenex' is a brand name…and should always be followed by an ® and the word 'Tissue.' [Kleenex® Brand Tissue] Help us keep our identity, ours."

The above marks are all protected by active trademark registrations; thus, it seems that their owners have been successful.

Although rare, it is possible for a trademark that has become generic to be "recaptured" from the public domain. Two such marks are SINGER and GOODYEAR. *In re Jeno's, Inc.*, 222 U.S.P.Q. 1021 (T.T.A.B. 1984) (citing McCarthy, *Trademarks and Unfair Competition*, § 12:10, 423-424). In both cases, however, many years had lapsed from the time that the trademark become generic until it was recaptured, and in each, the trademark owner had to show that the trademark had either acquired secondary meaning or served as a source indicator. *Gilson on Trademarks* § 2.02.

Marks are at particular risk if no generic term exists, such as in cases where the trademark owner is the first entrant and, thus, the mark is adopted as the product name. Somewhat counterintuitively, strong marks also are more likely to become generic.

**Trademark Usage Guidelines**
In order to avoid genericide, trademark owners should adhere to the following guidelines when using their trademarks:

- Use the generic name of the goods with the trademark (Q-Tips cotton swabs) (and, if your product is the first entrant, come up with a generic term for the product);
- Give proper notice of a registered trademark to consumers by using either: "Registered in U.S. Patent and Trademark Office" or "Reg. U.S. Pat. & Tm. Off." or the letter R enclosed within a circle, ®. 15 U.S.C. § 1111. For an unregistered mark, use TM;
- Distinguish the trademark from surrounding text by capitalizing the trademark, using a distinctive typeface, or at the very least, capitalizing the first letter of the trademark;
- Use the trademark as an adjective (KLEENEX tissues);
- Do not use the trademark as a noun (KLEENEX);
- Do not use the trademark in the plural (incorrect: buy two DR. PEPPERS; correct: buy two DR. PEPPER soda beverages);
- Do not use the trademark as a verb (incorrect - XEROX the document; correct - make a copy using a XEROX copier);
- Do not abbreviate the trademark or alter it in any way (use H&M and not H and M);
- Use the trademark on a line of products rather than a single product (NIKE, used on sneakers and clothing);
- Object to others' misuse of the trademark; and
- Educate the public, including individuals within the trademark owner's organization, distributors, dealers, and consumers, to ensure proper usage of the trademark. Misuse often occurs due to lack of education, not wrongful intent.

See Diamond, Sidney A., "Protect Your Trademark by Proper Usage," The Journal of Marketing, 26(3), 17-22 (1962).

See also INTA's brochure 📄 **A Guide to Proper Trademark Use**, fact sheet on **Trademarks vs. Generic Terms** and the presentation 📄 **Funeral for a Brand: How Trademarks Become Generic**.

**Conclusion**
Do not let your trademark become a victim of its own success. Make sure to use the trademark properly by following trademark usage guidelines, because failure to do so may result in genericide. Although educating the public via ad campaigns may be a successful strategy to avoid or ameliorate impending genericide, ad campaigns can be extremely costly and may not always yield the desired results. If you use the trademark correctly from the start, others are likely to follow suit.

Although every effort has been made to verify the accuracy of items in the INTA Bulletin, readers
are urged to check independently on matters of specific concern or interest.

© 2011 International Trademark Association

© 2019 International Trademark Association
Policies | FAQ | Contact Us

PowerfulNetworkPowerfulBrands.